IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOE A. MUSANTE, JR.,

      Plaintiff,                                        CIV S-04-2209 GGH

      vs.

JO ANNE B. BARNHART,                     <u>ORDER</u>
Commissioner of Social Security,

      Defendant.

_____/

*Introduction and Summary*

        Plaintiff seeks review of the Commissioner's final decision denying plaintiff's July 12, 2000 claim for Social Security Benefits (Title II).

        While the ALJ's decision in this case might be upheld if all medical personnel, no matter whether treating physician, examining physician, or document review physician, were to be given equal consideration, the ALJ makes the mistake here, as is often the case, in not affording the initial deference due the treating physician, and in not discussing in detail the reasons for rejection of the treating physician's opinions.

        Because the treating physician's opinion is presumptively afforded deference, the court grants plaintiff's summary judgment motion, denies the Commissioner's cross-motion, and

1

remands for a computation of benefits only.

*Issues*

The primary issue in this case involved the ALJ's rejection of plaintiff's treating physician's opinion. This rejection culminated in the rejection of a limitation opined by that doctor when hypotheticals were posed to a vocational expert.

*Background*

Plaintiff, born November 10, 1957, was found to have a combination of "severe" impairments as a result of coronary artery disease (plaintiff had received a bypass), diabetes, obesity, stroke, hypertension, and sensory-neural hearing loss.[1] The ALJ specifically found:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The claimant's allegations and those of his mother regarding his limitations' impact on his ability to work are not totally credible for the reasons set forth in the body of this decision.

6. I have carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

---

[1] An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u> 80 F.3d 1273, 1290 (9th Cir. 1996).

7. The claimant has the following residual functional capacity: the claimant can lift 20 pounds occasionally or 10 pounds frequently. He can stand or walk for up to 6 hours in an eight-hour workday and can sit when he is not standing or walking. He can occasionally climb, balance, stoop, crawl and kneel but should not be required to work at heights. He can work at jobs that do not require him to hear well on his right side. He can only push/pull or operate hand or foot controls occasionally with his right extremities. He is left hand dominant.

8. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1564) with a "limited education" (20 CFR § 404.1564) and transferability of skills is not an issue in this case (20 CFR § 404.1568).

10. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

11. Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.18 or 202.19 as a framework for decision-making, there is a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a light assembly worker, with 47,000 jobs; a light handpacker with 56,000 jobs; and a light laundry worker with 6,000 jobs.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

The ALJ posed two hypotheticals to the vocational expert:

Q. I'd like you to consider for me, please, a 44-year-old individual, educated to the 11th grade, and who is literate, and has that past relevant work [truck-driver]. You're to consider that he can lift 20 pounds occasionally and 10 pounds frequently; can stand and walk for six or more hours of the day, and can sit during any period that they [sic] were not required to stand or walk; he can occasionally bend, stoop, twist, squat, kneel, and crawl, but should not be required (INAUDIBLE) at heights; he has a hearing restriction of the right side, and should not be in a job that requires good hearing on the right side; his pushing and pulling, meaning the operation of hand and foot controls, is restricted to occasional on the right side, but not on the left side. This is a left dominant individual. With those limits, are there jobs that individual could do? I would expect the past work to be ruled out, because that was all medium work.

3

1   A. Yes, the past work would exceed that hypothetical.

2   Q. Are there other jobs that the individual could perform?

3   A. Well, essentially, we have almost a full range of light work, with the exception of occasional postural changes and occasional pushing and pulling which would allow for unskilled positions in the light range which would include assembly, and unskilled level of 47,000; which would include hand packers at an unskilled level of light, they're normally medium in the DOT at 56,000; which would include laundry related positions that are light unskilled, 6,000.

*** 

Q. Mr. Schmidt, you've indicated that, with regard to a couple of those, you have departed from the way that they are classified in the <u>Dictionary of Occupational Titles</u>. On what basis did you make that departure?

A. Statistical, statistical data and job experience.

***

Q. Let me add an additional qualification to that hypothetical. Again, a left handed individual, restricted to occasional grasping and fine manipulation with the right, non-dominant hand, but he can do frequent simple grasping and fine manipulation with the left, dominant hand. Would that have any effect?

A. That would eliminate those positions, Your Honor. They require fine manual activity throughout the day.

Q. More than frequent?

A. Well, well, it's actually constant for those positions. They're using their hands constantly. And with the one upper extremity limited to the occasional, that would rule that out.

(Tr. 254-255).

The ALJ did not propose any further hypotheticals, and the court assumes that if the occasional grasping and manipulation criteria were imposed, no jobs would be available.

\\\\\

\\\\\

\\\\\

4

*Discussion*

The ALJ accurately set forth the opinions of the treating physician:

> The claimant's treating internist reported that the claimant has weakness in his right leg and high blood pressure. She diagnosed the claimant with cervical thoracic strain, difficulties following a stroke in May of 2001, and right hemiparesis and dysarthia. The doctor concluded that the claimant can lift and carry up to 10 pounds with his left hand only. The claimant can sit for four hours at a time for a total of 8 hours in an eight-hour workday. He can stand and walk for two hours each or for one hour without interruption. He may only occasionally use his right hand for grasping and fine manipulation and may only occasionally use his right foot. The claimant may never climb, balance, stoop, crouch or crawl and may only occasionally kneel. He also has decreased hearing, he should not drive a manual transmission vehicle. He should also avoid all exposure to heights and avoid concentrated exposure to temperature extremes. (Exhibit 16F). I give less weight to this opinion as it appears to be unduly based on the claimant's subjective complaints.

(Tr. 20).

The ALJ made two errors with respect to the treating physician rule. First it is clear from the decision that the ALJ gave no deference whatsoever to the treating physician. Secondly, the treating physician opinion was rejected in large part, with the one-liner: "I give less weight to this opinion as it appears to be unduly based on claimant's subjective complaints." (Tr. 20).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).[2] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." <u>See</u> 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." <u>Id.</u> Medical opinions from "acceptable medical sources," have the same status when assessing weight. <u>See</u> 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

      To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

      In the body of the decision, the treating physician is placed fifth or sixth in the doctor discussion. The decision does not even pay lip service to the fact that normally this opinion would be the primary one to be relied upon. One cannot discern whether the ALJ believed the treating physician's opinion to be contradicted by another physician or not, and in what particulars. In this case, the ALJ simply repeated the often given statement that the treating

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

physician's opinion would be rejected, at least in part, because of undue reliance on the claimant's subjective complaints. The ALJ nowhere gives a record citation for what subjective complaints are referenced, and what medical facts specifically requires the rejection. He does not specify a particular complaint and demonstrate why a particular subjective complaint was exaggerated. Were all subjective complaints disregarded, or just some of them? Was the fine manipulation and grasping difficulties with the right hand one of those complaints that was rejected? We simply do not know from reading the decision.

Moreover, it is instructive to note in a similar vein, even with respect to some of the other doctors, the ALJ again utilized a one liner to reject opinions inconsistent with the ultimate result given, e.g., "I give significant weight to this opinion, but I will not adopt this residual functional capacity, as all of the limitations assigned by the doctor are not fully supported by the medical evidence." (Tr. 19). How can one give significant weight to an opinion, but reject "all of the limitations assigned by the doctor." And, why are all limitations inconsistent with the medical evidence? No explanation is given.

In sum, even assuming the treating physician's opinion herein was contradicted by other examining and non-examining physicians in every particular, specific and legitimate reasons with which to reject a treating physician's opinion cannot be solely based on the insertion of one-line conclusions. Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998).[4]

The rejection of the treating physician's opinion in this case has infected the ultimate result. When the vocational expert was given the fine manipulation and grasping limitation, he stated that all of the referenced jobs were eliminated.

Therefore, the decision of the ALJ cannot stand. The question remains whether to remand for further work-up by the ALJ, or to remand for payment of benefits only. The decision

---

[4] The ALJ's one line conclusions are correct statements of the law as far as they go; however, their ultimate validity in a particular context depends on their factual application. Clearly, for example, a doctor who relied on subjective complaints to determine a diagnosis and limitations would not be wrong every single time for so doing regardless of the facts.

whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). In general, the court will consider factors such as the completeness of the record, the weight of evidence in plaintiff's favor, and the potential harm to plaintiff due to further delay. Social Security Law and Practice, § 55.60 (1987). In terms of the completeness of the record, the court will determine whether additional administrative proceedings would remedy the defects in the decision, which the court cannot remedy based on the present record. See, Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal. 1996).

The undersigned determines that little would be gained from sending this case back for another determination. No one contests that the plaintiff's objective impairments are real, and there appears to be no justifiable reason to reject the treating physician's limitations. Indeed, the ALJ had to reject limitations of other doctors with who he agreed more in order to find plaintiff disabled. Utilizing the opinion of the treating physician, the vocational expert rejected all the jobs he had previously opined were possible. The record is complete in this regard. Finally, the application in this case was filed nearly five and one-half years ago. If plaintiff's case were to be sent back, and plaintiff were to be found disabled, the real potential exists that seven plus years will have expired from application to award. This is too long for an administrative benefits program.

*Conclusion*

Pursuant to 42 U.S.C. § 405(g), sentence four, summary judgment is awarded to plaintiff, and the Commissioner's cross-motion for summary judgment is denied. Judgment shall be entered in favor of plaintiff. This case is remanded for a computation of benefits only.

DATED: 12/14/05

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

musante.ord